## ANDREW ORTMAYER *et al.*
### *v.*
## HENRY T. JOHNSON *et al.*

NEGLIGENCE — *degrees of compared.* In actions for negligence the plaintiff to recover, must show, that the injury sustained, resulted from the negligence of the defendant, and not from any default on his part, which materially contributed to it; or, if not wholly free from fault himself, that his negligence was slight in comparison with that of defendant.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. MILLER, VAN ARMAN & LEWIS, for the appellants.

Messrs. BECKWITH, AYER & KALES, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action on the case brought by Johnson *et al.* against Ortmayer *et al.*, in which the plaintiffs recovered a verdict and judgment, and the defendants appealed.

470        ORTMAYER *et al. v.* JOHNSON *et al.*        [Sept. T.,

Opinion of the Court.

The plaintiffs and defendants occupied the same building in Chicago, the former the basement and first story as a hardware store, the latter the stories above as a saddle and harness store. The building was supplied with water from a main pipe laid in the alley at the rear. The water was taken by different branches to a sink in the second story, and also to a wash-basin in the basement, and to a water-closet under the sidewalk in the rear. The last two were under the control of the plaintiffs. There was no waste-pipe to carry off the water from the defendants' sink in the second story in case the faucet should he left open. Prior to December, 1865, there had been a little leakage from the upper story on the goods of the plaintiffs underneath, and the damage appears to have been amicably settled.

In that month the plaintiffs were having their own pipes in the basement attended to by the plumber, and they proposed to the defendants that a stop-cock be inserted in the pipe coming from the main in such manner that, on being closed, it would at once cut off the water from the second story, and from the plaintiffs' wash-basin in the basement. The object of this was to prevent the freezing and bursting of pipes, and to guard against accidents from the water. This arrangement, however, compelled the defendants to send from the upper stories to the basement for all the water they required, and it appears from the evidence, that, in the manufacture of their goods, they required from twelve to twenty pails *per diem.* As an equivalent for this, however, the plaintiffs were to take charge of this stop-cock and see that it was turned off at nights. The parties were sworn as witnesses, and agree that this was the arrangement, although the plaintiff Spencer swears it was to continue only during the frosty weather, and the defendant Ortmayer states the arrangement as without limitation as to time. From that date until the 9th of August following, the evidence shows no water passed through the pipe to the second story, and during that period the defendants brought what they required from the basement in pails. When the stop-cock was not closed, the water was allowed to

run constantly through the water-closet, and this prevented it from rising to the second story. When, after the return of warm weather, the defendants objected to having their supply thus cut off, the plaintiffs insisted that by this method the water-closet was kept in nice condition, and the defendants could have the use of that, and this so far satisfied the defendants that they acquiesced. The plaintiff who testifies says they did not insist on having the water.

In this condition of affairs, the water, on the 9th of August, 1866, rose in the night to the second story, and the faucet there having been left open, overflowed from the sink to the floor, and running through, damaged the goods of the plaintiffs, for which they brought this action, and recovered damages as already stated.

Under this state of facts, the right of the plaintiffs to recover depends, first, upon whether the injury to the plaintiffs' goods resulted from negligence on the part, of the defendants or their servants, — that is, whether the failure to keep the faucet closed in the second story was, under the circumstances, carelessness or negligence; and, secondly, if that question should be answered affirmatively, whether the plaintiffs were themselves free from any negligence which materially contributed to the injury, or whether their negligence, if any, was slight in comparison with that of plaintiffs. These are familiar principles of the law, which the Circuit Court did not disregard, but there are, nevertheless, several of the instructions given for the plaintiffs, while correct upon the plaintiffs' hypothesis of the case, do lay down a rule, in regard to what would be negligence on the part of the plaintiffs, that is erroneous when all the facts are considered, and would strongly tend to lead the jury astray.

The court substantially told the jury, in the first, fourth, fifth and sixth instructions for plaintiffs, that, unless there was an agreement by the plaintiffs to shut off the water in the basement every night, or if such agreement extended only to the frosty weather, then the omission by them to turn the water off in August was not a want of ordinary care and prudence on their part.

This view of the case held the plaintiffs discharged from all obligation to look after the stop-cock in the cellar, except so far as that obligation resulted from an agreement, thus making the decision of the case turn merely and simply upon whether there was an agreement between the parties, and what were its terms. But, in fact, in determining the question of comparative negligence between these parties, there are other things to be taken into the account besides the provisions of whatever agreement may have been made between them. The plaintiffs insist that the agreement imposing on them the duty of shutting off the water terminated with the termination of the frosty weather. Admit that to be true, yet if, from that time to the 9th of August they continued to exercise entire control over the flow of the water through the whole building, and by means of the stop-cock in the basement, or by the arrangement in the water closet, prevented its flow to the second story ; and if, so far from advising the defendants when they should cease to look after the water in pursuance of their winter arrangement, and thus putting them on guard for their joint security, they, in fact, when remonstrated with by the defendants in July, because the water was not permitted to flow to the upper story, insisted on the existing arrangement as the best one, and continued it, knowing the water was at no time rising to the second story, in consequence of their management of it in the basement, — then it is undeniable that their negligence in failing to turn the stop-cock in the basement, on the night of the 9th of August, was at least equal to that of the defendants, in failing to secure the faucet in the second story, where the water had not run since the previous December. And this would be so although the agreement had applied only to the frosty weather. The plaintiffs had control of the basement ; and, if for months they assumed control of the flow of water there, with or without an agreement, and so controlled it as to prevent it from rising to the second story, and the defendants were aware of this and acquiesced, then the latter had the right to presume that the plaintiffs would continue to take charge of the water until notified to the contrary. In

brief, it was not the agreement of December, 1865, which settled the question of comparative negligence between these parties in regard to an accident occurring in August, 1866, but, in connection with that agreement, the jury should have been left to consider all the subsequent acts of the parties in relation to this subject, and to what extent the plaintiffs had in fact, and for their own convenience or safety, taken the control of the flow of water to the second story out of the hands of the defendants, and thus lulled them into a false security as to the condition of the faucet on their own premises.

It is suggested that the deficiencies in the plaintiffs' instructions are cured by those given for the defendants. We do not think they are so to such an extent that we can say the jury were not misled.

An error is assigned on the decision of the court allowing the plumber, who put the stop-cock in the basement pipe, to be asked for what purpose it was put in. The question was only another mode of asking the witness his understanding of the purpose for which he was at work in inserting the stop-cock where he did, and what would be the effect of thus inserting it. The question can hardly be considered objectionable.

The judgment is reversed and the cause remanded.

*Judgment reversed.*